**ORAL ARGUMENT NOT YET SCHEDULED**

No. 22-1337 (and consolidated cases)

## IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

INTERNATIONAL DARK-SKY ASSOCIATION, INC., et al.,

*Appellants,*

v.

FEDERAL COMMUNICATIONS COMMISSION and
UNITED STATES OF AMERICA,

*Appellees,*

SPACE EXPLORATION HOLDINGS, LLC,

*Intervenor.*

———————————

On Appeal of an Order of the
Federal Communications Commission

———————————

## FINAL REPLY BRIEF FOR APPELLANT DISH NETWORK CORPORATION

———————————

Jeffrey H. Blum
Alison Minea
Hadass Kogan
**DISH NETWORK CORPORATION**
1110 Vermont Avenue NW
Suite 450
Washington, D.C.  20005

Pantelis Michalopoulos
Andrew M. Golodny
Mark C. Savignac
**STEPTOE & JOHNSON LLP**
1330 Connecticut Avenue NW
Washington, D.C.  20036
(202) 429-6494
PMichalo@steptoe.com

*Counsel for DISH Network Corp.*

August 8, 2023

## TABLE OF CONTENTS

GLOSSARY ...................................................................................... v

STATUTES AND REGULATIONS ................................................ vi

INTRODUCTION AND SUMMARY OF ARGUMENT ..................... 1

ARGUMENT ..................................................................................... 6

I.    The Commission Arbitrarily Ignored DISH's Evidence About The Joint Effect Of SpaceX's System .............................................. 6

    A.    *Viasat* Does Not Countenance Blind Reliance On Self-Certification ............................................................... 6

    B.    The FCC's Brief Tries To Cure The Order's Flawed Reasoning ....................................................................... 8

II.   The FCC Violated Its Own Rules And APA Requirements By Keeping A Key Showing Off The Record ............................... 15

III.  The FCC Unreasonably Waived The Very Rule It Claimed Was Sufficient to Protect DISH ................................................. 22

IV.   The Commission Unlawfully Subdelegated Authority to the ITU 24

CONCLUSION .............................................................................. 28

# TABLE OF AUTHORITIES

*\* Cases and other authorities principally relied upon are marked with asterisks.*

**Cases**                                                                 **Page(s)**

*Amerada Hess Pipeline Corp. v. FERC,*
  117 F.3d 596 (D.C. Cir. 1997) ................................................................ 27

*\*Animal Legal Def. Fund, Inc. v. Perdue,*
  872 F.3d 602 (D.C. Cir. 2017) .................................................. 10, 11, 15

*Bellsouth Corp. v. FCC,*
  17 F.3d 1487 (D.C. Cir. 1994) ............................................................... 20

*Blanca Tel. Co. v. FCC,*
  743 F.3d 860 (D.C. Cir. 2014) ............................................................... 19

*Butte Cnty., Cal v. Hogen,*
  613 F.3d 190 (D.C. Cir. 2010) ............................................................... 13

*Comcast Corp. v. FCC,*
  600 F.3d 642 (D.C. Cir. 2010) .................................................................. 8

*Genuine Parts Co. v. EPA,*
  890 F.3d 304 (D.C. Cir. 2018) ............................................................... 11

*Home Box Off. v. FCC,*
  567 F.2d 9 (D.C. Cir. 1977) .................................................................... 21

*Nat. Res. Def. Council, Inc. v. Train,*
  519 F.2d 287 (D.C. Cir. 1975) ............................................................... 21

*SEC v. Chenery Corp.,*
  318 U.S. 80 (1943) .................................................................................... 9

*Sec'y of Lab., Mine Safety & Health Admin. v. Westfall
  Aggregate & Materials, Inc.,*
  69 F.4th 902 (D.C. Cir. 2023) ............................................................... 13

iii

*Spectrum Five LLC v. FCC,*
    758 F.3d 254 (D.C. Cir. 2014) ............................................................ 27

\*_U.S. Telecom Ass'n v. FCC,_
    359 F.3d 554 (D.C. Cir. 2004) ................................................ 24, 25, 26

*United States v. Matherson,*
    367 F. Supp. 779 (E.D.N.Y. 1973) ..................................................... 25

*United States v. Wilson,*
    503 U.S. 329 (1992) ........................................................................... 20

*Viasat Inc. v. FCC,*
    47 F.4th 769 (D.C. Cir. 2022) ......................................................... 6, 7

*Wis. Power & Light Co. v. FERC,*
    363 F.3d 453 (D.C. Cir. 2004) .......................................................... 21

**Administrative Decisions**

Order
    *Space Exploration Holdings, LLC, Request for Orbital*
    *Deployment and Operating Authority for the SpaceX*
    *Gen2 NGSO Satellite System*, Order and Authorization,
    File Nos. SAT-LOA-20200526-00055 and SAT-AMD-
    20210818-00105, FCC 22-91 (rel. Dec. 1, 2022) .... 3, 4, 6, 7, 12, 13, 15,
    17, 22, 23

*Rules and Regulations Implementing the Telephone*
    *Consumer Protection Act of 1991,*
    35 FCC Rcd. 15052 (2020) ................................................................ 20

**Rules and Regulations**

47 C.F.R. § 1.106(d)(2) ............................................................................ 19

47 C.F.R. § 1.106(f) ................................................................................. 19

47 C.F.R. § 1.1202(a) .............................................................................. 16

47 C.F.R. § 25.146(c) .......................................................................... 22, 26

# GLOSSARY

| 12 GHz band | The portion of the electromagnetic spectrum ranging from 12.2-12.7 GHz |
| --- | --- |
| Communications Act | Communications Act of 1934, as amended, 47 U.S.C. §§ 151, *et seq.* |
| The Commission or FCC | Federal Communications Commission |
| GHz | Gigahertz |
| Order | *In the Matter of Space Exploration Holdings, LLC; Request for Orbital Deployment and Operating Authority for the SpaceX Gen2 NGSO Satellite System*, Order and Authorization, IBFS File Nos. SAT-LOA-20200526-00055 and SAT-AMD-20210818-00105, Call Sign S3069, FCC 22-91 (rel. Dec. 1, 2022) (JA0016-89) |

## STATUTES AND REGULATIONS

The relevant statutes and regulations not previously cited in DISH's opening brief are reproduced in the Statutes and Regulations Addendum.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The FCC's and SpaceX's briefs, which include an extraordinary revelation by SpaceX, only serve to confirm the Order's arbitrariness. The FCC and SpaceX try to will away the Order's intractable problems by: retroactively attempting to repair the Order on brief; invoking this Court's *Viasat* case, which, as the Order itself acknowledges, presents "a different record"; relying on alleged ITU findings of compliance procured by SpaceX that do not cover the "joint effect" of the system, as required by the Order; arguing that the FCC could keep the only evidence in support of SpaceX's certification of compliance out of the record on the ground that, effectively, SpaceX's word is golden; and demoting the ITU's dispositive role as final and unchallengeable arbiter to that of a mere factual "input[ter]." These efforts are in vain.

The Order violated the FCC's mandate to prevent interference; refused to consider DISH's evidence that, using the ITU method, the joint effect of SpaceX's system would exceed the ITU power limits; violated the APA and the FCC's own rules by allowing SpaceX to keep key evidence outside the public record; arbitrarily waived the very FCC rule that, in the agency's view, was enough to protect DISH, thereby

1

allowing SpaceX to begin operations without *any* check on its system's power; and unlawfully delegated core FCC functions to a foreign entity by relying on a belated, post-op check by the ITU alone.

The FCC's and SpaceX's briefs resort to explanations that the Order never mentioned. For the first time, the FCC translates the Order's lack of any comment on DISH's expert evidence into "some reason to doubt the findings of the study performed by DISH's expert." FCC Br. at 46. The doubt invented by the FCC would be sophistry pure and simple even if it were not a *post hoc* invention of counsel. The alleged lack of interference from the lower-power Gen1 system, even if true, does not dictate a lack of interference from the higher-power Gen2 system.

The rationalizations do not stop there. Suddenly, the FCC parlays the lack of any engineering rebuttal of DISH's study from SpaceX into "unresolved conflicting evidence." *Id.* at 47 n.9. The FCC discovers that supposed conflict by elevating SpaceX's certification that its system complies with the power limits to the status of evidence. "[U]nresolved" goes to the heart of the matter. The agency had the chance to resolve evidentiary issues; critically, it did not.

The *Viasat* decision does not control this case.  There, DISH had tried to *improve* the FCC-endorsed ITU method for assessing power levels.  Here, DISH applied the ITU method *without any change* and demonstrated that the combined SpaceX system would exceed the ITU's power limits.  Nor did *Viasat* reach the merits of DISH's subdelegation argument.  And, while it upheld the Commission's waiver of a prior ITU finding of compliance, *Viasat* did not reach a separate APA issue that is more serious here—the inconsistency between the agency relying on its rule requiring prior ITU review to protect DISH and, in the same breath, waiving that rule to allow operations without the finding.

SpaceX alleges that the ITU has now made findings of compliance with the power limits for the Gen2 system.  SpaceX Br. at 10.  But, far from mooting the waiver challenge, these findings illustrate the vast unregulated no-man's land that the Order has created.  The ITU's findings, touted by SpaceX as settling the issue, are in reality different than the "joint effect" finding the FCC asked SpaceX to obtain.  Order ¶ 31 (JA0038).  And, to date, despite its allegation to this Court, SpaceX has not communicated these various ITU findings to the FCC, as required by the Order, ¶ 135(s) (JA0085), further demonstrating their

inadequacy. And, the FCC lacks the authority to require the ITU to issue the joint effect finding it has required. The result? Millions of satellite customers are left vulnerable.

The idea that the FCC did not consider the substance of SpaceX's submission, FCC Br. at 51-52, remains both implausible and irrelevant. The FCC asks the Court to believe that the agency found SpaceX's first and only showing of compliance with the power limits to be inadequate, but that it did not consider the sufficiency of the substitute showing. The agency's own evident evaluation of the showing that SpaceX did make for the record shows that the FCC needed to look at the replacement showing, too.

After the FCC rejected the parties' requests for "time to evaluate [those data] prior to our issuance of this Order," Order ¶ 34 (JA0041), the agency's brief now argues that any error was harmless: the parties were supposedly given time after the Order but before the deadline for petitions for reconsideration. But the APA requires agencies to get it right the first time. And, in any event, DISH only had one business day before the 30-day reconsideration deadline to analyze the showing. When the Order required SpaceX to provide its showing upon DISH's

request, SpaceX refused to provide it immediately.  DISH pled to the
agency for prompt access precisely in light of the looming 30-day
reconsideration deadline.  The FCC did nothing to stop SpaceX from
running out the clock: the agency is estopped from arguing harmless
error here.

Legitimate third-party input into an agency's deliberations
requires a process to place that input *in* a decision, an evaluation of the
input in that decision, and an opportunity to appeal that decision and
challenge the agency's reliance on the input.  What the ITU provided
here is pure *out*put.  The FCC does not plan to evaluate it; it does not
plan to issue a rationale for accepting it, which affected parties may
then challenge in court; and it may not tell the ITU what to do, a
problem that proves especially serious now that the ITU has gone ahead
and done something different than hoped.  The ITU is far from a mere
delegate providing data to the agency; it is the judge, jury, and, in the
case of error, possible executioner of the protections to which satellite
television customers are entitled, without the possibility of any appeal.

# ARGUMENT

## I.  The Commission Arbitrarily Ignored DISH's Evidence About The Joint Effect Of SpaceX's System

### A.  *Viasat* Does Not Countenance Blind Reliance On Self-Certification

In *Viasat*, this Court held that "the governing rules require interference between GSO and NGSO systems to be assessed through the method used in the ITU-approved validation software." *Viasat Inc. v. FCC*, 47 F.4th 769, 776 (D.C. Cir. 2022).  This case asks whether the FCC may ignore expert reports that *do* use a method consistent with its rules.  The FCC's and SpaceX's briefs try to fit the round peg of this case into the square hole of *Viasat*.  But the facts, the agency's refusal to consider DISH's evidence that the combined system would transmit excessive power, and its refusal to allow evidence on SpaceX's second showing of compliance once the first was found insufficient, all compel the conclusion that the Order is contrary to law.

The Order itself recognized that SpaceX's application here differed materially from the one addressed in *Viasat*.  The FCC: "recognize[d] the differences in the issues raised by the record before us in this proceeding," Order ¶ 30 (JA0037); and "recognize[d] that this is a different record from the SpaceX Gen1 Starlink application," *id.* ¶ 40

(JA0043). The FCC cannot now pretend the two cases are the same, cite *Viasat*, and call it a day.

DISH is not contesting the *Viasat* principle that "the governing rules require interference . . . to be assessed through the method used in the ITU-approved validation software." 47 F.4th at 776. To the contrary, DISH followed that directive here with precision: *DISH's study used the ITU method without any changes*, as the Order acknowledged. Order ¶ 30 (JA0037). The FCC nevertheless failed to engage with DISH's expert conclusion that the system's joint effect would violate the power limits. It viewed SpaceX's second certification of compliance as sufficient without analyzing SpaceX's second showing, even as it evidently found SpaceX's first certification *in*sufficient because of SpaceX's first showing. It may have been reasonable for the agency to do so when "the reports use[d] a different method for assessing interference than what binding regulations require." *Viasat*, 47 F.4th at 776. But it was entirely unreasonable for the agency to play fast and loose with the evidence when the study used the method *required* by the regulations.

7

DISH is also not contesting the general practice of the FCC relying on applicants' certifications in licensing proceedings.  FCC Br. at 41.  But that reliance must end when a party's certification rests first on an inadequate showing, and then on a showing outside of the record.  The FCC cannot have it both ways: examine SpaceX's showing in support of its first certification, find it inadequate, and then ignore SpaceX's showing in support of the second certification on the ground that, this time, SpaceX's word is sufficient.  That reliance on the applicant's say-so is also no longer appropriate when it is the last, not first, step in the evaluation process.  These problems were either not implicated at all, or, in the case of improper delegation, explicitly not reached, by *Viasat.*

### B.   The FCC's Brief Tries To Cure The Order's Flawed Reasoning

The FCC now discovers problems with DISH's study that somehow justify the Order's failure to consider it.  *Id.* at 46 ("[T]here was some reason to doubt the findings of the study performed by DISH's expert.").  But the Order did not discuss the merits of DISH's study at all.  *Post hoc* rationalizations are, of course, improper.  *See Comcast Corp. v. FCC,* 600 F.3d 642, 660 (D.C. Cir. 2010) ("[T]he Commission

8

must defend its action on the same grounds advanced in the Order.");

*SEC v. Chenery Corp.*, 318 U.S. 80, 93-94 (1943) ("[Agency's] action

must be measured by what the Commission did, not by what it might

have done.").

What is more, the belatedly discovered "doubt" is illogical.

According to the brief, the FCC had received "no reports of actual

harmful interference caused by SpaceX's Gen1 system." FCC Br. at 46-

47. The FCC's brief seems to assume that harmful interference from

SpaceX is easy to show. When a customer loses television service, it is

hard for them to know if it is due to a SpaceX satellite exceeding the

power levels or caused by something else. That makes it very difficult

for DISH to troubleshoot the customer's issue. That is why compliance

with the power limit rules by SpaceX *up front* is so essential to protect

DBS customers. And that is what the FCC's Congressional mandate is

designed to ensure—to get it right before interference occurs and

consumers are harmed. In any event, even if the lower-power Gen1

system had not caused interference, that proves nothing about the

higher-power Gen2 system.

9

The FCC's brief also for the first time weighs the 56-page study prepared by an expert satellite engineer against SpaceX's self-certification, and concludes that, "[a]t most, the FCC was presented with unresolved conflicting evidence[.]" *Id.* at 47 n.9. This is not only too late but also too little—false equivalence at its finest. The certification is not "evidence" but, rather, a mere self-serving statement devoid of evidentiary support. Even assuming that an expert report and a party's own unsupported statement can somehow cancel each other out, the agency was still obligated to actually investigate the evidence that counters its decision rather than pretending it does not exist and punting to the ITU. *See Animal Legal Def. Fund, Inc. v. Perdue,* 872 F.3d 602, 619 (D.C. Cir. 2017) ("The mere fact that a regulatory scheme is generally consistent with the agency's authorizing statute does not shield each agency action . . . from arbitrary and capricious review.").

SpaceX tries to distinguish *Animal Legal Defense Fund* by stating that "here, there are no contemporaneous (or any) Commission or ITU

findings of non-compliance[.]"[1]  But the absence of findings is not exactly a feather in the FCC's APA cap.  "Conclusory explanations for matters involving a central factual dispute *where there is considerable evidence in conflict* do not suffice to meet the deferential standards of our review."  *Genuine Parts Co. v. EPA,* 890 F.3d 304, 312 (D.C. Cir. 2018) (emphasis added).  In the end, the FCC makes a conversation-ending admission when it tries to justify the Order based on "unresolved conflicting evidence."  FCC Br. 47 n.9.  That is exactly the problem—the agency violated its duty to resolve the conflict.

In fact, the agency half-acknowledged the duty it abdicated.  The FCC did try to resolve one conflict (in connection with the attempted system split in SpaceX's first showing of compliance) only to ignore DISH's showing that the system's joint effect would violate the limits.

---

[1] SpaceX Br. at 16-17.  The government in *Animal Legal Defense Fund* made very similar arguments to the FCC's arguments here.  *See* Brief for Appellees at 44, *Animal Legal Def. Fund*, 872 F.3d 602. ("[B]ecause [the agency's] regulations are a permissible construction of the [statute], [the agency] cannot be found to have acted arbitrarily or capriciously in renewing a license in accordance with the administrative requirements in those regulations.").  But the Court found that the agency acted arbitrarily in renewing a license when "the agency's explanation for its decision runs counter to the evidence allegedly before it."  872 F.3d at 619.

The FCC went on to conclude that no conflict resolution was necessary in connection with SpaceX's substitute showing that the combined system would supposedly do no such thing; and further decided that showing did not need to be placed in the record.  Order ¶¶ 31, 34 (JA0038, 0040-41).

Specifically, the Order found that SpaceX's split of its system into 18 parts—SpaceX's first effort to show its compliance with the power limits—was "reasonable" but not sufficient, requiring SpaceX to obtain a finding from the ITU that shows the ITU considered the "joint effect" of SpaceX's system.  *Id.* ¶ 31 (JA0038).  DISH's expert submission was the only possible basis in the record for the FCC's conclusion that the system's joint effect needed to be analyzed.  But, after considering the split-system showing and DISH's objections to it, the FCC decided the time for analysis was over.  After showing its own awareness that conflicts over SpaceX's first showing needed to be resolved, the FCC decided that DISH's conclusion about the combined system's effect need not be examined; and that, with respect to the second showing, not even an airing, let alone a resolution, of the conflict was necessary.  DISH's and SpaceX's showings on the system's joint effect were ships that

sailed past each other in the night on parallel routes, one inside the proceeding as required, one outside it.

In fact, the FCC's finding that SpaceX's 18-way split was "reasonable," *id.* (JA0038), is yet another failure of reasoned decisionmaking itself.  How come it was reasonable if SpaceX needed to obtain a "joint effect" finding of compliance from the ITU, rather than a finding based on several split subsystems?  The FCC never explains this inconsistency.

The distinction between rulemakings and adjudications attempted by SpaceX, SpaceX Br. at 16, is spurious: agencies cannot ignore relevant evidence in adjudication contexts either.  *See Butte Cnty., Cal v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) (Courts treat an agency's "refusal to consider evidence bearing on the issue before it" as "one and the same" for rulemaking and adjudication.) (cleaned up); *Sec'y of Lab., Mine Safety & Health Admin. v. Westfall Aggregate & Materials, Inc.*, 69 F.4th 902, 911 (D.C. Cir. 2023).

The FCC, citing the Order, states that "nothing in the FCC's rules requires other parties' independent confirmation of SpaceX's interference analysis using the ITU software."  FCC Br. at 34.  The

Order provides no citation to this proposition (if true, then it would largely make most of the public comment on pending applications a nullity). But even assuming it is correct, it does not follow that the agency can blind itself once it found that the first showing backing SpaceX's certification of compliance was inadequate. An agency cannot escape its *statutory* obligation to reasonably consider relevant evidence simply because *the agency's own rules* supposedly obviate the need for reasoned decisionmaking.

The FCC also urges that "it was entirely reasonable for the FCC to accept SpaceX's certification, since that certification was subject to subsequent verification by the ITU." *Id.* at 43. But, even ignoring the improper delegation, *see infra*, it turns out that the ITU's "subsequent verification" addressed an entirely different proposition than the Order asked SpaceX to have the ITU verify. SpaceX notes that "the ITU published favorable findings for SpaceX's Gen2 system." SpaceX Br. at 10. The plural "findings" is already a worrying clue. Why would there need to be multiple findings of compliance for the "joint effect" of a combined system? On their face, too, the findings do not "explicitly indicate[] the ITU has considered the joint effect of SpaceX's multiple

14

ITU filings[.]"  Order ¶ 31 (JA0038).  Further undermining the

ostensible verification touted by SpaceX, *see* SpaceX Br. at 10, SpaceX

has not communicated the ITU findings to the FCC, as required by the

Order, ¶ 135(s) (JA0085), another sign these findings are not the

verification the Order requires.

SpaceX's reliance on the opaque ITU findings also shows that the

FCC's nebulous promise of future enforcement if SpaceX is found to be

non-compliant, FCC Br. at 43, is illusory.  *See Animal Legal Def. Fund*,

872 F.3d at 619 ("The agency has not explained how its retention of

authority to enforce the standards . . . indicates that the agency acted

rationally when relying on the self-certification[.]").  Here, in fact, it is

not clear that future enforcement is even possible.  The FCC lacks the

authority to require the ITU to "consider[] the joint effect of SpaceX's

multiple ITU filings."  Order ¶ 32 (JA0039).

## II.   The FCC Violated Its Own Rules And APA Requirements By Keeping A Key Showing Off The Record

The FCC does not deny that it requested SpaceX's combined data

file, and that it kept that file out of the public record of the proceeding.

The FCC defends this by arguing that it supposedly did not rely on the

substance of the combined file, that SpaceX's submission was not an

15

improper ex parte presentation because it was not "directed to the merits or outcome of [the] proceeding," 47 C.F.R. § 1.1202(a), and that even if it was improper, it was "harmless" error that did not prejudice DISH.  FCC Br. at 51-54.  The idea that SpaceX's private submission was not directed to the merits and outcome of the proceeding cannot be credited unless the proceeding had neither merits nor outcome.  It was central to both, and even if the FCC decided for some reason it was not, it needed to be.

The FCC's contention that its decision "focus[ed] on SpaceX's certification," rather than "the substance of the combined data file," *id.* at 51, is belied by the very Order the agency is defending here.  The FCC inextricably linked the submission of the combined data file to the SpaceX certification on which it indisputably relied:

> SpaceX confirms that this combined filing demonstrates compliance with all applicable EPFD limits . . . we find that SpaceX's certification of compliance with the EPFD limits . . . would ensure that SpaceX's Gen2 Starlink system will comply with the EPFD limits which should protect GSO operations from harmful interference.

Order ¶ 31 (JA0038). This paragraph cites SpaceX's October 27, 2022 letter, regarding its combined files, not once but twice. *Id.* nn. 149, 151 (JA0038).[2]

If SpaceX had *not* provided the material at the FCC's request, the outcome would have been different. While the FCC could have chosen to accept a SpaceX certification that was unattached to any data submission as sufficient (which would have had its own legal infirmities), it did not do so, and the Commission cannot now disregard the combined data file as irrelevant to its decision to authorize the Gen2 system.

The key role of SpaceX's private submission is transparent. During the proceeding, DISH had contested the sufficiency of SpaceX's initial showing. SpaceX responded outside the proceeding by submitting files that did not split the system into 18 parts. It is impossible to see how a submission directly responsive to evidence submitted by DISH in the record could qualify as *not* directed towards the merits or outcome of the proceeding and remain outside the record.

---

[2] Indeed, the FCC's brief cites SpaceX's October 27 letter four times. FCC Br. at 19, 40, 46, 47.

Indeed, SpaceX certainly believed that its combined data files were directed to the merits and outcome of the proceeding. In its October 27, 2022 letter, which gave parties the first clue of the existence of those files, SpaceX stated that the "combined EPFD data files . . . . when analyzed with the ITU-approved validation software, comply with the applicable EPFD limits." SpaceX Oct. 27, 2022 Letter at 2 (JA0234). Why would SpaceX have made that statement if it believed the substance of the files to be irrelevant? SpaceX later tried to go back on that statement by saying the opposite—that the files are not "relevant to determining the Gen2 system's compliance with EPFD limits." SpaceX Nov. 10, 2022 Letter at 1 (JA0235). But the beans had been spilled.

The agency also claims that any violation of its rules was "harmless" because "DISH had an opportunity to contest any arguments that were advanced in SpaceX's combined file at the reconsideration stage of this proceeding." FCC Br. at 53 (cleaned up). DISH received the combined data files from SpaceX on December 30, 2022, just one business day before petitions for reconsideration, which require

"particularity," 47 C.F.R. § 1.106(d)(2), were due.[3]  Apparently

recognizing the impossibility, the FCC claims DISH could have sought

leave to file a supplement to a reconsideration petition.  FCC Br. at 54

n.12.  But, the rule cited by the FCC establishes a presumption against

granting such supplemental filings.  *See* 47 C.F.R. § 1.106(f) ("No

supplement or addition to a petition for reconsideration . . . filed after

expiration of the 30 day period, will be considered except upon leave[.]").

No case suggests that the possibility that an agency might decide to

accept *a supplemental filing in support of a reconsideration request*

somehow cures a procedural violation committed in initially granting

the license.[4]

    In fact, the FCC's suggestion that harm was not done because

DISH had time to request reconsideration seems ironic in light of the

---

[3] DISH counsel received the combined files at 5:09 PM on Friday, December 30.  New Year's Day was January 1, 2023, and notices of appeal to this Court were due on Tuesday, January 3.

[4] The decision cited by the FCC is inapposite: there, this Court did not find that the "opportunity" to seek reconsideration rendered an ex parte violation harmless, but simply agreed with the Commission's finding on reconsideration that the ex parte violation in that proceeding was harmless.  *See Blanca Tel. Co. v. FCC*, 743 F.3d 860, 867 (D.C. Cir. 2014).

FCC's prior disregard for DISH's need for time. DISH requested SpaceX's files on December 1, 2022, immediately upon the release of the Order, which required SpaceX to provide them to requesting parties. SpaceX disregarded the request until DISH repeated it on December 13, and then SpaceX simply responded that it did not want DISH to use the files to request a timely stay of the Order. DISH Dec. 16, 2022 Letter, Ex. 1 at 1-2 (JA0246-47). Then, on December 16, 2022, DISH sought the FCC's assistance, *see id.* (JA0243), a request ignored by the FCC.

Excusing the Commission's violation of its ex parte rules as harmless based solely on the ever-present opportunity to seek reconsideration would eviscerate the protections those rules are intended to provide. Such "absurd results are to be avoided." *United States v. Wilson*, 503 U.S. 329, 334 (1992). Moreover, under this Court's precedent, seeking reconsideration would have precluded DISH from seeking the relief requested in this appeal. *See Bellsouth Corp. v. FCC*, 17 F.3d 1487, 1489 (D.C. Cir. 1994). And FCC reconsideration decisions are not subject to time limits and often take years, rendering any relief stale. *See, e.g.*, 35 FCC Rcd. 15052, 15055 ¶ 11 n.31 (2020) (order on reconsideration took over four years).

If the FCC brief's reliance on DISH's supposed ability to request reconsideration affords a glimpse into the FCC's thinking behind the Order's mysterious half-measure of a remedy, the view is even more unsettling from the APA perspective, too. It was unclear from the beginning what DISH was supposed to do with SpaceX's late files, as it was only allowed to receive them after the Order had already been decided. Now the FCC argues that DISH could use the files to request reconsideration and achieve a change in the Order *after* it was decided. But the APA does not envision a two-step process for the agency to discharge its duty of reasoned decisionmaking. In addition, if that was the intent, the Order should have required SpaceX to provide the files immediately, rather than allowing SpaceX to play the clock.

It is black-letter law that agencies "may not rely on data known only to the agency." *Wis. Power & Light Co. v. FERC*, 363 F.3d 453, 463 (D.C. Cir. 2004); *see also Nat. Res. Def. Council, Inc. v. Train,* 519 F.2d 287, 292 (D.C. Cir. 1975) (remanding because the record omitted "factual data" possessed by the agency); *Home Box Off. v. FCC*, 567 F.2d 9, 55 (D.C. Cir. 1977) ("Even the possibility that there is . . . one administrative record for the public and this court and another for the

Commission and those in the know is intolerable."). This is what happened here.

## III. The FCC Unreasonably Waived The Very Rule It Claimed Was Sufficient to Protect DISH

The "differen[ces]" acknowledged by the Order itself between the record of this proceeding and that under review in *Viasat*, Order ¶ 40 (JA0043-44), are also relevant to the FCC's waiver of the requirement of an ITU finding of compliance "[p]rior to the initiation of service." 47 C.F.R. § 25.146(c). The evidence DISH submitted in this proceeding demonstrated that application of the ITU's method without change would have shown the combined system to violate the limits. This made it imperative to obtain the ITU's finding before the initiation of service, as the FCC's rule requires. Yet the FCC showed the same indifference to the importance of a pre-operations finding. If the waiver was justified in *Viasat*, it was not justified here.

In fact, the circumstances of this case make even more stark a fundamental inconsistency that was not discussed at all by the *Viasat* court. Through the waiver, the FCC took away the very protection of satellite television that was the basis for its refusal to consider technical evidence. Where DISH showed that the limits will be exceeded even if

22

the system was examined under the unalloyed ITU method, the FCC's failing to engage with that evidence in the name of the ITU's role and then allowing deferral of that role is particularly jarring and certainly unreasonable.

As noted above, SpaceX states that "the ITU has now issued favorable findings for the Gen2 system—effectively mooting the waiver issue." SpaceX Br. at 24. They do nothing of the kind, as they are not the findings requested by the FCC—they do not "explicitly indicate[] the ITU has considered the joint effect of SpaceX's multiple ITU filings[.]" Order ¶ 31 (JA0038). Even SpaceX, while waving them before this Court, has not stated to the FCC that they are the right findings, as SpaceX would have had to do. *Id.* ¶ 135(s) (JA0085) ("SpaceX must communicate the ITU finding to the Commission[.]").

In fact, there are several discrepancies in the June 2023 ITU findings that cast doubt on which SpaceX system the ITU actually reviewed. SpaceX cited a range of 10 files (each of which appears to reference a subset of the entire system's orbits). The key parameters are different from the files that DISH obtained from SpaceX in December 2022. For example, the satellite orbits, including the

23

altitudes, number of planes, number of satellites per plane, and the inclinations all differ. Additionally, the "date of receipt" is October 7, 2019, meaning that this approval was for an earlier version of the system, and that it took the ITU three-and-a-half years to process the application. Extract of SpaceX ITU Input Files, https://www.itu.int/en/ITU-R/space/Pages/epfdData.aspx (JA0264).

The ITU findings cited by SpaceX thus only serve to showcase the Order's unreasonableness and the lack of the very enforcement tools that, according to the Order, justified the agency's failure to review the evidence. Future enforcement is hampered by the FCC's inability to order the ITU to make the finding that the FCC deems necessary.

## IV. The Commission Unlawfully Subdelegated Authority to the ITU

This Court has held that subdelegation is only permissible for three types of "legitimate outside party input into agency decision-making processes: (1) establishing a reasonable condition for granting federal approval; (2) fact gathering; and (3) advice giving." *U.S. Telecom Ass'n v. FCC*, 359 F.3d 554, 566 (D.C. Cir. 2004) ("*USTA*"). The FCC does not invoke the third category, and its delegation to the ITU does not fall into the first or second, either.

24

*First*, ITU approval is not a reasonable condition for federal approval because the FCC delegated a core function of the agency (avoiding spectrum interference) to the ITU. An agency cannot "delegate[] to another actor almost the entire determination of whether a specific statutory requirement . . . has been satisfied." *Id.* at 567. Here, the FCC delegated interference analysis of SpaceX's Gen2 system to the ITU and decided in advance of the ITU's analysis that it would not review it, thwarting Congress's decision in the Communications Act to impose that obligation on the FCC.

The FCC's citation to *United States v. Matherson* is inapt. FCC Br. at 61. There, a regulation prohibited an agency from issuing vehicle permits unless a municipality also approved. *United States v. Matherson*, 367 F. Supp. 779, 781-82 (E.D.N.Y. 1973). But the agency "retain[ed] the ultimate decision-making power" to issue vehicle permits. *Id.* at 783. Here, the Commission's wholesale delegation of its interference authority to the ITU leaves the Commission without any ultimate decisionmaking power.

*Second*, ITU approval is not mere "fact gathering" because the Commission abdicated the oversight required under *USTA*. An agency

must retain "final certification authority" over any outside entity it relies on for fact gathering. *See USTA*, 359 F.3d at 567. The regulation states: "Prior to the initiation of service, [a non-geostationary] operator . . . must receive a 'favorable' or 'qualified favorable' finding by the ITU Radiocommunication Bureau." 47 C.F.R. § 25.146(c). But according to the FCC's interpretation, "[u]nder 47 C.F.R. § 25.146(c), any dispute concerning the accuracy of SpaceX's certification is resolved by the ITU[.]" FCC Br. at 46. The FCC therefore did *not* "exercise[] independent, final authority regarding interference." SpaceX Br. at 26. Having the ITU "resolve" such disputes goes beyond mere "fact gathering" under any definition of the term.[5]

The FCC admits that there is no supervision here, as it "saw no reason . . . to conduct a separate compliance review that would simply duplicate the analysis performed by the ITU." FCC Br. at 64 (cleaned up). And the FCC does not even reserve an option to review the ITU's work: "the Commission made clear that the ITU—not the FCC or its staff—would make findings regarding an operator's compliance with the

---

[5] DISH is challenging, not the incorporation of ITU standards, FCC Br. at 60 n.13; SpaceX Br. at 26, but the outsourcing of all evaluation of compliance with them.

ITU's power limits." *Id.* at 39. As this Court explained in a case cited by the FCC, "the ITU is an international organization that is not regulated by our government and therefore not bound by this Court or the FCC." *Spectrum Five LLC v. FCC*, 758 F.3d 254, 261 (D.C. Cir. 2014).

SpaceX mistakenly relies on cases where an agency retained supervision—unlike here—and an out-of-context holding about *Chevron* deference. SpaceX Br. at 26. The cited case granted *Chevron* deference to FERC for its interpretation of an oil spill settlement agreement that used accounting standards from a professional association. *Amerada Hess Pipeline Corp. v. FERC*, 117 F.3d 596, 601 (D.C. Cir. 1997). But FERC applied the accounting standards itself rather than outsourcing that task to the association. *See id.* at 601-02. Here, the ITU calls the shots on interference while the FCC stands by with handcuffs it put on itself.

Because the Commission abdicated its final decisionmaking authority and oversight of the ITU's calculations, it unlawfully subdelegated its interference analysis to the ITU. That delegation was neither a reasonable condition nor a mere fact-finding function.

27

## CONCLUSION

This Court should vacate the Order with respect to the Gen2

system's use of the 12 GHz band.

Dated:  August 8, 2023                         Respectfully submitted,

Jeffrey H. Blum                              /s/ *Pantelis Michalopoulos*
Alison Minea                                 Pantelis Michalopoulos
Hadass Kogan                                 Andrew M. Golodny
**DISH NETWORK CORPORATION**                 Mark C. Savignac
1110 Vermont Avenue NW                       **STEPTOE & JOHNSON LLP**
Suite 450                                    1330 Connecticut Avenue NW
Washington, D.C. 20005                       Washington, D.C.  20036
                                             (202) 429-6494

                                             *Counsel for DISH Network Corp.*

## CERTIFICATE OF COMPLIANCE

I, Andrew K. Magloughlin, counsel for Appellant DISH Network Corporation, hereby certify pursuant to Fed. R. App. P. 32(g) that the brief complies with the type-volume limitations of Fed. R. App. P. 27(d)(2).  This motion was prepared in a proportionally space typeface using 14-point, Century font, and contains 5,493 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).


Dated: August 8, 2023                    /s/ *Andrew K. Magloughlin*
                                         Andrew K. Magloughlin
                                         STEPTOE & JOHNSON LLP
                                         1330 Connecticut Ave. NW
                                         Washington, D.C. 20036
                                         (202) 429-5508

# STATUTES AND REGULATIONS ADDENDUM

# STATUTORY AND REGULATORY ADDENDUM

## TABLE OF CONTENTS

<u>Regulations</u>

1.    47 C.F.R. § 1.106(d)(2)..................................................................ADD2

2.    47 C.F.R. § 1.106(f)......................................................................ADD3

# REGULATIONS

## 47 C.F.R. § 1.106(d)(2)

§ 1.106 Petitions for reconsideration in non-rulemaking proceedings.

(d)(2) A petition for reconsideration of a decision that sets forth formal findings of fact and conclusions of law shall also cite the findings and/or conclusions which petitioner believes to be erroneous, and shall state with particularity the respects in which he believes such findings and/or conclusions should be changed. The petition may request that additional findings of fact and/or conclusions of law be made.

47 C.F.R. § 1.106(f)

§ 1.106 Petitions for reconsideration in non-rulemaking proceedings.


(f) The petition for reconsideration and any supplement thereto shall be filed within 30 days from the date of public notice of the final Commission action, as that date is defined in § 1.4(b) of these rules, and shall be served upon parties to the proceeding. The petition for reconsideration shall not exceed 25 double spaced typewritten pages. No supplement or addition to a petition for reconsideration which has not been acted upon by the Commission or by the designated authority, filed after expiration of the 30 day period, will be considered except upon leave granted upon a separate pleading for leave to file, which shall state the grounds therefor.

## CERTIFICATE OF SERVICE

I hereby certify that, on August 8, 2023, I electronically filed the foregoing document with the United States Court of Appeals for the D.C. Circuit by using the CM/ECF system. I certify that the counsel of record for Appellees and Intervenor are registered as ECF Filers and that they will be served by the CM/ECF system.

/s/ *Pantelis Michalopoulos*
Pantelis Michalopoulos
STEPTOE & JOHNSON LLP
1330 Connecticut Ave. NW
Washington, D.C. 20036
(202) 429-6494